UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

UNITED STATES OF AMERICA

v.

THOMAS NDISSI,
Defendant.

Docket No.: 2:25-cr-00143-cr

## PLEA AGREEMENT

The United States of America, by and through the United States Attorney's Office for the District of Vermont (hereafter "the United States"), and the defendant, THOMAS NDISSI, agree to the following in regard to the disposition of pending criminal charges.

1. THOMAS NDISSI agrees to waive Indictment and plead guilty to Count 1 of the Superseding Information charging him with traveling in interstate commerce for the purpose of engaging in any illicit sexual conduct, in violation of 18 U.S.C. § 2423(b).

2. THOMAS NDISSI understands, agrees and has had explained to him by counsel that the Court may impose the following sentence on his plea: up to 30 years of imprisonment, pursuant to 18 U.S.C. § 2423(b); up to 5 years of supervised release, pursuant to 18 U.S.C. § 3583; up to a $250,000 fine, pursuant to 18 U.S.C. § 3571; a $5,000 special assessment under 18 U.S.C. § 3014; and a $100 special assessment pursuant to 18 U.S.C. § 3013.

3. THOMAS NDISSI agrees to plead guilty because he is, in fact, guilty of the above crime.

4. THOMAS NDISSI stipulates to, agrees with, and admits the following facts:

(a) At all times relevant to this case, THOMAS NDISSI lived in Western Massachusetts.

(b) In late September, 2025, THOMAS NDISSI met an undercover law enforcement officer ("UC"), who was posing as a 13-year-old female from Vermont, on a messaging platform.

(c) Over the next six weeks, THOMAS NDISSI exchanged messages via the messaging platform and via text messaging with UC.

(d) During the message exchanges with UC, THOMAS NDISSI confirmed UC's purported age, and planned for THOMAS NDISSI and UC to meet for the purpose of engaging in sexual intercourse.

(e) THOMAS NDISSI messaged with the UC about when and where they would have sexual intercourse, and which sexual positions they would use.

(f) During the course of their messaging, THOMAS NDISSI expressed that he could not afford to get caught, and asked UC not to get him in trouble. THOMAS NDISSI also confirmed he planned to bring condoms to have sexual intercourse with UC, so he would not be caught if the UC's mother took her to the hospital for a test kit after THOMAS NDISSI and the UC had sexual intercourse.

(g) During their messaging, THOMAS NDISSI arranged to gift UC a hat and a sweater for having sexual intercourse with him.

(h) THOMAS NDISSI booked a hotel in White River Junction, Vermont, with an arrival date of November 3, 2025, and a departure date of November 4, 2025. The purpose of renting the hotel room was to have sexual intercourse with UC.

(i) On November 2, 2025, THOMAS NDISSI sent UC a message with a screenshot of the hotel reservation. THOMAS NDISSI also sent UC a message confirming that he was going to have sexual intercourse with UC the following day.

(j) On November 3, 2025, THOMAS NDISSI travelled via bus from the Springfield, Massachusetts area to the White River Junction, Vermont area for the purpose of engaging in sexual intercourse with the UC.

(k) Law enforcement encountered THOMAS NDISSI on the walkway outside the White River Junction hotel room he had rented.

(l) THOMAS NDISSI later admitted he had been messaging with UC, who he believed to be a 13-year-old female, and had traveled from Western Massachusetts to White River Junction, Vermont. Inside the bag THOMAS NDISSI was carrying when he was encountered were multiple condoms and a hat similar to the one he had promised UC as a gift for having sexual intercourse with him.

5. THOMAS NDISSI understands that it is a condition of this agreement that he refrain from committing any further crimes, whether federal, state or local, and that if on release he will abide by all conditions of release.

6. THOMAS NDISSI acknowledges that he understands the nature of the charges to which he will plead guilty and the possible penalties. He also acknowledges that he has the following rights: the right to persist in a plea of not guilty; the right to a jury trial; the right to be represented by counsel – and if necessary have the court appoint counsel – at trial and at every other stage of the proceeding; the right at trial to confront and cross-examine adverse witnesses; the right to be protected from compelled self-incrimination; and the right to testify and present evidence and to compel the attendance of witnesses. He understands that by pleading guilty, he will waive these rights. He also understands that if his guilty plea is accepted by the Court, there will be no trial and the question of guilt will be resolved; all that will remain will be the Court's imposition of sentence.

7. THOMAS NDISSI fully understands that he may not withdraw his plea because the Court declines to follow any recommendation, motion or stipulation of the parties to this agreement, other than an agreement between the parties pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). The United States specifically reserves the right to allocute at sentencing. There shall be no limit on the information the United States may present to the Court and the Probation Office relevant to sentencing and no limit (except as otherwise provided in this agreement) on the positions the government may take at sentencing. Both parties are free to move for a departure under the Guidelines and to argue for a sentence outside the advisory sentencing range, except as otherwise set forth in this agreement. The United States also reserves the right to correct any misstatement of fact made during the sentencing process, to oppose any motion to withdraw a plea of guilty, and to support on appeal any decisions of the sentencing Court whether in agreement or in conflict with recommendations and stipulations of the parties.

8. THOMAS NDISSI fully understands that any estimates or predictions relative to the Guidelines calculations are not binding upon the Court. THOMAS NDISSI acknowledges that there is no agreement between the parties as to both the calculation of the offense level and the defendant's criminal history category. THOMAS NDISSI understands his criminal history could impact both the offense level and the criminal history category applicable to his Guideline calculation. He fully understands that the Guidelines are advisory and that the Court can consider any and all information that it deems relevant to the sentencing determination. He acknowledges that in the event that any estimates or predictions by his attorney (or anyone else) are erroneous, those erroneous predictions will not provide grounds for withdrawal of his plea of guilty, modification of his sentence, or for appellate or post-conviction relief.

9.  THOMAS NDISSI agrees to make a good-faith effort to pay any fine or restitution he is ordered to pay.  THOMAS NDISSI agrees to pay the special assessment at the time of sentencing.

10. THOMAS NDISSI acknowledges that, under certain circumstances, he is entitled to appeal his conviction and sentence.  After consulting with counsel, the defendant agrees that he will not file a direct appeal, or collaterally attack, his conviction in any proceeding, including but not limited to a motion under 28 U.S.C. §2255. Nor will he pursue such an appeal or collateral attack to challenge the Court's sentence as described in the following terms. The waiver covers the term of imprisonment imposed by the Court if that term does not exceed 120 months. This waiver also covers the conditions and duration of any term of supervised release of 5 years or less, and any fine of $5,000 or less. The defendant expressly acknowledges that he is knowingly and intelligently waiving his rights to appeal or collaterally attack his conviction and sentence. Nothing in this waiver of appellate and collateral review rights shall preclude the defendant from raising a claim of ineffective assistance of counsel in the appropriate forum.

11. THOMAS NDISSI recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. The defendant, if not a United States citizen, may be removed from the United States, denied citizenship, and denied admission to the United States in the future. Removal and other immigration consequences are the subject of a separate proceeding, however, and he understands that no one, including his attorney or the district court, can predict to a certainty the effect of his conviction on his immigration status. THOMAS NDISSI nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is his automatic removal from the United States.

12. THOMAS NDISSI understands that by pleading guilty, he will be required to register as a sex offender upon his release from prison as a condition of supervised release pursuant to 18 U.S.C. § 3583(d). THOMAS NDISSI also understands that independent of supervised release, he will be subject to federal and state sex offender registration requirements, and that those requirements may apply throughout his life. He understands that he will be required to keep his registration current, notify the state sex offender registration agency or agencies of any changes in his name, place of residence, employment, or student status, or other relevant information. THOMAS NDISSI understands that he will be subject to possible federal and state penalties for failure to comply with any such sex offender registration requirements.

13. The parties jointly recommend that the Court impose the following terms as conditions of THOMAS NDISSI's Supervised Release:

a) You must participate in an approved sex offender evaluation and any treatment program(s) recommended by the evaluation, as directed by the probation officer. The evaluation and treatment program(s) may include polygraph examinations. Any refusal to submit to such assessment or tests as scheduled is a violation of the conditions of supervision. You will be required to pay the cost of treatment as directed by the probation officer. The court authorizes the probation officer to release psychological reports and/or the presentence report to the treatment agency for continuity of treatment. In the event of a supervised release violation petition, the court authorizes the probation officer to release any evaluation and psychological reports to defense counsel.

b) You must provide the probation officer with access to any requested records, such as bills or invoices for credit cards, telephone and wireless communication services, television provider services, and Internet service providers.

c) You must provide the probation officer with a complete and current inventory of the number of computers (as defined in 18 U.S.C. § 1030(e)(1)), electronic devices capable of Internet access, or any media storage devices used, possessed, or in your control along with a monthly log of computer access.

d) You must not use computer devices (as defined in 18 U.S.C. § 1030(e)(1)), electronic devices capable of Internet access, or any media storage devices until a Computer Use Plan is developed and approved by your treatment provider and/or probation officer. Such plan, at a minimum, may require you to submit a record of Internet use, online screen names, encryption methods, and passwords utilized by you.

e) You must not access any computer devices (as defined in 18 U.S.C. § 1030(e)(1)), electronic devices capable of Internet access, or any media storage devices that utilize any encryption, anonymization, "cleaning" or "wiping" software programs.

f) You must not view, access or possess images or videos depicting sexually explicit conduct involving adults, as defined in 18 U.S.C. § 2256(2)(A); child pornography, as defined in 18 U.S.C. § 2256(8); or visual or text content involving minors which has sexual, prurient or violent interests as an inherent purpose.

g) You must not associate or have contact, directly or through a third party, with persons under the age of 18, except in the presence of a responsible adult who is aware of the nature of your background, and who has been approved in advance by the probation officer. Such prohibited conduct shall include the use of electronic communication, telephone, or written correspondence. You may have contact with your minor children, subject to the approval of, and the terms and conditions set by, your probation officer.

h) You must avoid and are prohibited from being in any areas or locations where children are likely to congregate, such as schools, daycare facilities, playgrounds, theme parks, arcades, unless prior approval has been obtained from the probation office.

i) You must allow, at the direction of the probation officer and at your expense, the installation of monitoring hardware or software to monitor your use of computer systems, internet-capable devices and/or similar electronic devices under your control.

j) You must not have contact, directly or through a third party, with the victim(s) in this case. Such prohibited conduct shall include the use of electronic communication, telephone, and written correspondence. Should a victim related to you desire contact with you, and request such contact, you may have contact with said victim, subject to the prior approval of, and the terms and conditions set by, your probation officer.

k) You must submit your person, and any property, house, residence, vehicle, papers, computer, other electronic communications or data storage devices or media, and effects to search at any time, with or without a warrant, by any law enforcement or probation officer with reasonable suspicion concerning a violation of a condition of supervised release or unlawful conduct by the person, and by any probation officer in the lawful discharge of the officer's supervision functions. Such searches may include the removal of such items for the purpose of conducting a more thorough inspection. You shall inform other residents of this condition. Failure to submit to a search may be grounds for revocation.

14. The United States agrees that in the event that THOMAS NDISSI fully and completely abides by all conditions of this agreement, the United States will:

a. move to dismiss the Indictment at the time of sentencing;

b. not file additional federal charges in the District of Vermont based on the conduct described in the factual stipulations at paragraph 4;

c. recommend that he receive a two-point credit for acceptance of responsibility under Guideline § 3E1.1(a), provided that (1) he cooperates truthfully and completely with the Probation Office during the presentence investigation, including truthfully admitting the conduct comprising the offense(s) of conviction and not falsely denying any relevant conduct for which he is accountable under U.S.S.G. § 1B1.3, (2) he abides by the conditions of his release, and (3) provided that no new information comes to the attention of the United States relative to the issue of his receiving credit for acceptance of responsibility; and

d. move for an additional one-point credit for timely acceptance of responsibility, if the offense level (before acceptance) is 16 or greater and he meets the conditions in the subparagraph above.

15. If the United States determines, in its sole discretion, that THOMAS NDISSI has committed any offense after the date of this agreement, has violated any condition of release, or has provided any intentionally false information to Probation, the obligations of the United States in this agreement will be void. The United States will have the right to recommend that the Court impose any sentence authorized by law and will have the right to prosecute him for any other offenses he may have committed in the District of Vermont. THOMAS NDISSI understands and agrees that, under such circumstances, he will have no right to withdraw his previously entered plea of guilty.

16. THOMAS NDISSI and the United States agree, pursuant to Fed. R. Crim. P. 11(c)(1)(C), that the appropriate term of imprisonment the Court should impose is not less than 87 months,

and not more than 120 months. Under this agreement, the Court retains discretion with all other aspects of the sentence, including the fine, the restitution, and the term of supervised release. The defendant further understands that if the court rejects the plea agreement on the agreed upon sentencing stipulation, the United States may deem the plea agreement null and void.

17. It is understood and agreed by the parties that should THOMAS NDISSI's plea not be accepted by the Court for whatever reason, or later be withdrawn or vacated, this agreement may be voided at the option of the United States and he may be prosecuted for any and all offenses otherwise permissible. THOMAS NDISSI also agrees that the statute of limitations for all uncharged criminal offenses known to the United States as of the date it signs this plea agreement will be tolled for the entire period of time that elapses between the signing of this agreement and the completion of the period for timely filing a petition under 28 U.S.C. § 2255, or if such petition is filed, the date of any decision by a court to vacate the plea or the conviction.

18. It is further understood that this agreement is limited to the Office of the United States Attorney for the District of Vermont and cannot bind other federal, state or local prosecuting authorities.

19. THOMAS NDISSI expressly states that he makes this agreement of his own free will, with full knowledge and understanding of the agreement and with the advice and assistance of his counsel, ALEJANDRO B. FERNANDEZ, Esq. THOMAS NDISSI further states that his plea of guilty is not the result of any threats or of any promises beyond the provisions of this agreement. Furthermore, THOMAS NDISSI expressly states that he is fully satisfied with the representation provided by his attorney, ALEJANDRO B. FERNANDEZ, Esq., and has had full opportunity to consult with his attorney concerning this agreement, concerning the applicability and impact of the Sentencing Guidelines (including, but not limited to, the relevant conduct

provisions of Guideline Section 1B1.3), and concerning the potential terms and conditions of supervised release.

20. No agreements have been made by the parties or their counsel other than those contained herein or in any written agreement supplementing this agreement.

UNITED STATES OF AMERICA

JONATHAN A. OPHARDT
First Assistant United States Attorney

5/27/26
Date

KATHERINE H. FLYNN
Assistant U.S. Attorney

5.26.26
Date

THOMAS NDISSI
Defendant

I have read, fully reviewed and explained this agreement to my client, THOMAS NDISSI. I believe that he understands the agreement and is entering into the agreement voluntarily and knowingly.

5.26.26
Date

ALEJANDRO B. FERNANDEZ
Counsel for the Defendant